Thelma Marie HIATT, Appellant
(Plaintiff Below),

v.

Eugene L. BROWN, Kenneth W. Brown
(The Everett I. Brown Company),
Appellees (Defendants Below).

No. 2-1279A392.

Court of Appeals of Indiana,
Second District.

June 30, 1981.

Rehearing Denied August 18, 1981.

William H. Sparrenberger, Indianapolis,
Paul G. Smith, Smith, Pearce & Howard,
Noblesville, for appellant.

Sidney Mishkin, Mishkin, Eaglesfield,
Darst & Grossman, Indianapolis, John D.
Proffitt, Campbell, Kyle & Proffitt, Nobles-
ville, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Plaintiff-appellant Thelma Marie Hiatt
(Hiatt) appeals from a summary judgment
granted in favor of defendants-appellees
Eugene L. Brown, et al., (Brown) in a negli-
gence action, claiming a genuine issue of
material fact existed as to whether archi-
tect Brown proximately caused her injuries
suffered when she was blown from a vehic-
ular/pedestrian ramp by the blast from a
jet airplane at Indianapolis International
Airport.

Judgment reversed.

## FACTS

Distilled from the pleadings, depositions, answers to interrogatories, admissions, and affidavits, are these facts and inferences therefrom.

On the morning of April 28, 1970, Thelma Marie Hiatt (Hiatt) was walking up a vehicular/pedestrian ramp leading from the ground level to the second level of Indianapolis International Airport (formerly Weir Cook Airport). She expected to board a Trans-World Airlines (TWA) flight to Kansas City by entering the passenger check-in area located at the top of the ramp and then proceeding to the boarding gate.

Unfortunately she never reached the top of the ramp because the jet blast from a nearby TWA airplane blew her down the pedestrian walk and across the surface of the adjoining street, inflicting serious injuries upon her person. They consisted of a cerebral concussion; cranial-facial lacerations; severed nerves; fracture of the left mandible; loss of several teeth; severe shock; permanent scarring and numbness of facial areas; loss of hair; permanent damage to her teeth, jaws, and mastication process; and continuing pain.

In 1964, the Indianapolis Airport Authority (IAA) had contracted with Brown to prepare plans and specifications for the expansion of the existing terminal building. Article 3 of the contract provided that the drawings and specifications were to be "for the complete general erection of said project ready for use, all according to the best building practice, as approved by the owner." *Record* at 186. To be described in the drawings and specifications were "*walks, ramps, drives*, parking areas, and other work and equipment necessary to render the project suitable for occupancy . . . ." *Id.* (emphasis added).

Not contemplated specifically in the contract was any alteration to the vehicular/pedestrian ramp in question, which was already part of the existing terminal building. However, an architect with experience designing airports testified that under the terms of the contract Brown's responsibility included the design of the ramp as part of the overall expansion of the airport.

As the expansion to the terminal was designed, and eventually constructed, a TWA aircraft arrival/departure gate was placed near the existing ramp. It was thought at the time the airport terminal addition was designed that all airlines would employ the nose-in/push-out operation in loading and unloading, which required tugs to be used to push the aircraft toward the terminal on arrival or pull it away from the terminal (and the ramp) on departure. In November and December 1965 Brown discussed "jet blast problems" with TWA and representatives of IAA, and sometime during late 1965 or early 1966, Brown discovered that TWA intended to use a taxi-in/taxi-out operation, thereby subjecting the unprotected ramp to jet blast (exhaust) emanating from arriving and departing TWA aircraft.

Brown submitted his plans for approval in December 1965, IAA accepting them in the spring of 1966. Whether IAA approved Brown's design before Brown learned of TWA's taxi-in/taxi-out plans, whether Brown learned of the taxi-in/taxi-out operations intended before he submitted the plans, and whether TWA and IAA knew of the need for jet blast protection before the plans were submitted or approved, is unclear from the record. Yet, there was still time to make design changes during the construction phase. And in fact numerous change orders to the design were permitted during construction. Nonetheless, Brown did not request change orders for the construction of jet blast protection fences, as existed at other major airports.

Expert testimony by deposition was to the effect that Brown did not follow ordinary standards of architectural practice in failing to study available information regarding the jet blast problem. Differently stated, Brown did not meet his duty as an architect to use ordinary and reasonable care in designing the terminal expansion.

IAA accepted the completed terminal building addition as designed by Brown in October, 1967; TWA began using a taxi-

in/taxi-out operation without jet blast protection for the ramp. Numerous incidents of personal and property damage subsequently resulted from the jet blast of nearby TWA aircraft engulfing the ramp.

Despite the known dangerous design and the known injuries to personal property, neither TWA nor IAA acted to warn pedestrians of the danger or otherwise take steps to prevent future injuries. The jet blast danger could have been eliminated immediately if TWA had changed to a nose-in/push-out operation or if a protective fence had been built.

Hiatt filed a claim against Brown, TWA, and IAA, seeking damages in the sum of $200,000.00. A settlement was reached between TWA, IAA, and Hiatt for $50,000.00. The claim against Brown was then pursued. Concluding that any negligence of Brown did not proximately cause Hiatt's injuries, the trial court granted Brown's motion for summary judgment against Hiatt, saying in part:

> 1. The conduct of the Airport Authority and TWA as set forth above constituted the intervention of an independent human agency which had the effect of breaking the chain of causation between any negligence of Brown and the plaintiff's injury. Brown is relieved of liability because TWA utilized and the Airport Authority permitted a taxi in-taxi out parallel parking operation by jet planes at Gate 31 on and before April 28, 1970 and because Airport Authority elected to operate and permit the operation of the facilities without the existence of jet blast protection for persons on the elevated roadway when both the Airport Authority and TWA well knew and had discussed the jet blast danger to such persons after the expanded terminal building was accepted and at least eleven months before plaintiff was injured. See, for example, *Travis v. Rochester Bridge Co.* (1919) 188 Ind. 79, 122 N.E. 1, *Stapinski v. Walsh Construction Co.* (1978) Ind.App., 383 N.E.2d 473.

> 2. Alternatively and as a separate and independent ground of decision, the Court concludes that any negligence of Brown in failing to investigate or design jet blast protection for the elevated roadway as a part of its December 7, 1964 contract for the terminal expansion and modernization did no more than furnish a condition or give rise to the occasion by which the plaintiff's injury was made possible and the conduct of the Airport Authority and TWA as set forth above was the active, direct, independent, effective and intervening cause of the plaintiff's injury. See, for example, *Wilcox v. Urschel* (1936) 101 Ind.App. 627, 200 N.E. 465, *Slinkard v. Babb* (1953) 125 Ind.App. 76, 112 N.E.2d 876, *Schroer v. Edward J. Funk & Sons, Inc.* (1968) 142 Ind.App. 223, 233 N.E.2d 680.

*Record* at 543. From this entry of summary judgment, appeal is taken.

### ISSUE

Is there a genuine issue of material fact as to whether Hiatt's injuries were proximately caused by Brown's negligence?[1]

*PARTIES' CONTENTIONS*—Both parties appear to concede for the purposes of this appeal that Brown was negligent in designing the terminal expansion.

Hiatt contends that the lack of privity between Brown and Hiatt is not a bar to a negligence action by an injured third party who was a stranger to the architect-owner relationship, citing to section 385 of the Restatement (Second) of Torts (1965) and to cases establishing exceptions to the privity rule in Indiana law. As to proximate cause, Hiatt says even if it is assumed that the conduct of TWA and IAA was an intervening cause of Hiatt's injuries, Brown still proximately caused her injuries because the intervention of TWA and IAA was foreseeable.

Brown counters that, even if lack of privity is not a bar to liability pursuant to section 385 of the Restatement, the conduct

---

1. Other issues were raised by Hiatt which we need not consider because we reverse and remand. *Burk v. State*, (1971) 257 Ind. 407, 275 N.E.2d 1.

of TWA and IAA is an intervening cause which under section 385 acts to release Brown from liability. Hiatt's foreseeability argument is not addressed by Brown.

## DECISION

*CONCLUSION*—We conclude that there is a genuine issue of material fact as to whether Brown proximately caused Hiatt's injuries, i. e., whether the intervening conduct, or lack of it, was foreseeable.

### A. *Standard of Review*

For those with a penchant for repetition, we repeat familiar principles. Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C); *Papp v. City of Hammond*, (1967) 248 Ind. 637, 230 N.E.2d 326; *Boswell v. Lyon*, (1980) Ind.App., 401 N.E.2d 735; *Tabani v. Hester*, (1977) Ind.App., 366 N.E.2d 193. A fact is "material" for the purposes of summary judgment if it facilitates the resolution of any of the issues involved. *Brandon v. State*, (1976) Ind., 340 N.E.2d 756; *Richards v. Goerg Boat & Motor Company*, (1979) Ind.App., 384 N.E.2d 1084. Summary judgment also is improper if different inferences can be drawn from undisputed facts. *Smith v. P & B Corp.*, (1979) Ind. App., 386 N.E.2d 1232; *Meier v. Combs*, (1970) 147 Ind.App. 617, 263 N.E.2d 194.

In determining whether a summary judgment motion was properly granted, the facts set out in the opponent's pleadings, affidavits, etc. are liberally construed in favor of the opponent of the motion, and any doubt about the existence of a material issue of fact is resolved against the proponent of the motion. *Podgorny v. Great Central Insurance Company*, (1974) 160 Ind. App. 244, 311 N.E.2d 640; *Doe v. Barnett*, (1969) 145 Ind.App. 542, 251 N.E.2d 688. The burden is on the proponent to establish that no genuine issue as to any material

fact exists. *Barbre v. Indianapolis Water Company*, (1980) Ind.App., 400 N.E.2d 1142.

### B. *Privity*

Predictably Brown and Hiatt disagree as to the effect of section 385 of the Restatement. Conceding negligence for purposes of this appeal, they dispute the proper application of section 385 of the Restatement, which says that lack of privity does not bar a negligence action by an injured third party who is a stranger to the contractor-owner relationship. Hiatt urges us to adopt section 385 as the law of Indiana.

Generally speaking, in Indiana privity has been a barrier to injured third parties in negligence actions involving the sale of goods: no privity of contract, no liability, following the rule in *Winterbottom v. Wright*, (1842) 152 Eng.Report 402. Similarly, a builder or architect's responsibility to third parties terminated upon completion of the structure and acceptance by the owner. *See Daugherty v. Herzog*, (1896) 145 Ind. 255, 44 N.E.2d 457.

Paralleling the substantial downfall of the privity requirement in the sale of consumer goods, numerous exceptions eventually were recognized in the contractor-owner relationship. For example, privity was no bar if at the time the owner accepted the work the contractor knew it was in a condition dangerously defective, *Travis v. Rochester Bridge Co.*, (1918) 188 Ind. 79, 122 N.E.2d 1, or if the work as completed was inherently or imminently dangerous. *Holland Furnace Co. v. Nauracaj*, (1938) 105 Ind.App. 574, 14 N.E.2d 339.

Paying heed by analogy to the compelling logic of *MacPherson v. Buick Motor Co.*, (1916) 217 N.Y. 382, 111 N.E. 1050, a great number of courts, perhaps most, have abolished the privity requirement in the contractor-owner relationship. Annot., 97 A.L. R.3d 455 (1980); 5 Am.Jur.2d, *Architects* § 23 (1962); W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 104 (1971); Comment, *Architect Tort Liability and Preparation of Plans and Specifications*, 55 Calif.L.Rev. 1361 (1967); *Witherspoon, Architects, Engineers' Tort Liability*, 16 *Def.*

*L.J.* 409 (1967); Note, *Liability of Design Professionals—The Necessity of Fault,* 58 Iowa L.Rev. 1221 (1973); Davidson, *The Liability of Architects,* Trial, June 1976, at 20. Section 385 of the *Restatement* reflects this trend:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

If section 385 is the law of Indiana, lack of privity would not preclude Brown's liability to Hiatt. Adoption or rejection of section 385, however, is unnecessary in this case. Brown owes Hiatt a duty imposed by an exception to the privity rules recognized in Indiana. Whether lack of privity would preclude an action by a third person against an architect in circumstances not within an exception to the privity barrier, as heretofore developed in Indiana law, is a question we leave for another time.

█ In this state, the privity barrier has repeatedly collapsed if it is established that the architect's design was done so negligently as to create a condition imminently dangerous to third persons. *Davis v. Henderlong Lumber Co.* (N.D.Ind.1963), 221 F.Supp. 129 (chemical fume hood caused inhalation of toxic fumes); *Gillam v. J. C. Penney Co.,* (S.D.Ind.1961), 193 F.Supp. 558 (defectively installed escalator injured child); *Great Atlantic & Pacific Tea Co. v. Wilson,* (1980) Ind.App., 408 N.E.2d 144 (principle inapplicable); *Holland Furnace Co. v. Nauracaj, supra* (furnace negligently installed caused fire). *See also J. I. Case Co. v. Sandefur,* (1964) 245 Ind. 213, 197 N.E.2d 519. And so it would seem the

result of Brown's negligent design allowed the jet blast from the engines of large aircraft to cause harm to the persons and property of those using the nearby vehicular/pedestrian ramp, a condition imminently dangerous to third persons. So it is reasonable to conclude that Hiatt is within the privity exception established by Indiana law.

Proximate cause, that sometimes elusive means of imposing liability, must now be considered. More specifically, is there a genuine issue of material fact as to whether Brown's negligence was the proximate cause of Hiatt's injuries?

Our inquiry begins with whether TWA and IAA's conduct was an intervening cause which superseded Brown's negligence, as Brown stoutly contends.

### C. *Intervening Cause*

█ It is said that if an owner learns of a dangerously defective condition upon his land but fails to remedy it, his conduct is an intervening cause which acts to exonerate the architect from liability.[2] *E. L. Shorafa v. Ruprecht,* (1977) Fla.App., 345 So.2d 763; *Strakos v. Gehring,* (1962) Tex., 360 S.W.2d 787; *Leininger v. Stearns-Roger Manufacturing Co.,* (1965) 17 Utah 2d 37, 404 P.2d 33; W. PROSSER, *supra,* § 104, at 681–682; Comment, *Architect Tort Liability in Preparation of Plans and Specifications, supra* at 1375.

According to Hiatt's complaint, IAA and TWA knew about the defective design long before Hiatt was injured, but did nothing. Sensible indeed, then, is the rule which relieves the architect of liability when the owner discovers or should have discovered a dangerous defect, yet refuses to warn others of the danger or correct the defect. Were it not so an architect otherwise would remain liable to third parties, albeit powerless to cure a known defect which is on land in possession of another.

But our inquiry does not end there. As we explained in *Stauffer v. Ely,* (1971) 149 Ind.App. 93, 99, 270 N.E.2d 889, 892:

**2.** Hiatt does not argue that an extremely dangerous condition existed or that some special relationship existed which might cause Brown to remain liable notwithstanding IAA or TWA's

conduct. *See PROSSER, supra,* § 44, at 288. Our holding is thus limited to when an owner discovers an unreasonably dangerous condition on his land and fails to remedy it.

The proximate cause of an injury is the efficient cause, the one that necessarily sets the other causes in operation. *Sarber v. City of Indianapolis* (1920), 72 Ind. App. 594, 126 N.E. 330. The mere intervention, however, of an independent negligent act, as in this case, will not in and of itself relieve the original negligent actor of legal responsibility. *Engle v. Director General of Railroads* (1922), 78 Ind. App. 547, 133 N.E. 138, 139; *Cleveland, C., C. & St. L. Ry. Co. v. Clark* (1912), 51 Ind.App. 392, 97 N.E. 822. Under Indiana law an intervening negligent act breaks the chain of liability only if that intervention could not have been reasonably foreseen by the original negligent actor. *Leatherman v. Gateway Transportation Company* (1964), 7 Cir., 331 F.2d 241. In short, reasonable foreseeability is still the fundamental test of proximate cause and this rule is not changed by the existence of an intervening act or agency. *Phares v. Carr* (1952) 122 Ind.App. 597, 106 N.E.2d 242.

*Accord, Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847; *Bridges v. Kentucky Stone Co.*, (1980) Ind.App., 408 N.E.2d 575; *Cohder v. Hull Lift Truck, Inc.*, (1980) Ind.App., 405 N.E.2d 538.

The question may then best be posed in terms of foreseeability. Is there a genuine issue of material fact as to whether the intervening conduct was foreseeable— whether Brown should have foreseen TWA's and IAA's knowing failure to remedy the defect?

█ We know that proximate cause is normally a jury question. *Elder v. Fisher, supra* 247 Ind. at 606, 217 N.E.2d at 606, says so:

Ordinarily, the issue of proximate cause is for the jury if different minds might reasonably draw different inferences from the facts given. Certainly it is for the jury to determine whether or not the injurious consequences that resulted from negligence are such as ought reasonably to have been foreseen, or whether an intervening cause was such as to break the causal connection. 21 I.L.E. § 204 Negligence, 428, at 430.

And again, "[t]he debatable quality of issues such as negligence and proximate cause, the fact that fair-minded people might reach different conclusions, emphasizes the appropriateness and necessity of leaving such questions to a fact-finding body." *Bridges v. Kentucky Stone Co., supra* at 576.

Hiatt produced the published deposition of an architect, Marian Williams (Williams), who had worked for IAA in designing the terminal as existing prior to the expansion designed by Brown. Williams testified that potential jet blast problems had been discussed with IAA in 1959 or 1960. No action was taken because jet traffic would not be near the terminal.

In answer to an interrogatory, Brown said that he had discussed potential jet blast problems in November and December 1965 with architects from IAA and TWA. An inference arises that these "jet blast problems" included the taxi-in/taxi-out operation intended by TWA and the effects upon the ramp. Brown submitted for approval its final plan in December 1965. So an inference arises that TWA and IAA were aware of the need for jet blast protection and that Brown could foresee them not installing jet blast protection after construction was completed, for no provision for protection was made before acceptance of the plans in the spring of 1966.

Further, IAA, TWA, and Brown knew that TWA would be employing a taxi-in/taxi-out operation at least by the spring of 1966 but no change orders were ever requested, as permitted in the contract. So an inference could arise that Brown could foresee neither IAA nor TWA's installing jet blast protection devices later because they did not require them to be installed during construction, even while they were aware of the jet blast problem. Of course, an inference might also arise that Brown negligently had told TWA and IAA that jet blast protection was unnecessary and therefore they agreed to the design. The inferences are conflicting; the inferences are not so clear that the issue should be taken

from the trier of fact. The depositions and pleadings could support an inference that Brown should have reasonably foreseen the intervening conduct of IAA or TWA.

An Illinois appellate court had this to say about inferences of foreseeability:

When a building is designed and built, it is foreseeable that it will not be changed in a material manner for some time to come. It is foreseeable that contractees will not install safety features that designers have omitted. An underlying purpose of tort law is to provide for public safety through deterrence of negligent designers and builders.

*Johnson v. Equipment Specialists, Inc.* (1978), 58 Ill.App.3d 133, 15 Ill.Dec. 491, 373 N.E.2d 837.

Brown mistakenly relies on *Stapinski v. Walsh Construction Co.* (1979) Ind., 395 N.E.2d 1251, claiming the rule in that case would lead us to a different result.

In *Stapinski* the Supreme Court refused to hold liable the non-dealer seller of a defective truck sold as "AS IS" for injury to a third party. The court emphasized that the seller was not in the business of selling trucks and was "in no position to insure against injury as occurred . . . ." *Id.* at 1254. Not so here. Brown was in the business of designing structures.

Brown, as the last leg of his flight plan on appeal, clings to section 388 of the Restatement as relieving him from liability. Section 388 only states that an architect is relieved from liability *if* he could reasonably foresee that the owner, once aware of the danger, would warn third parties. Having already determined that the factual inferences in this case as to foreseeability are not without dispute, section 388 is of no benefit to Brown.

As there is a genuine issue of material fact as to the foreseeability of the conduct (or lack of it) by TWA and IAA as an intervening cause of Hiatt's injuries, summary judgment was improper.

Therefore the judgment is reversed and remanded for further proceedings consistent herewith.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.