Orville Lynn **WEBB**, M.D., **Appellant,**
(Defendant Below),

v.

Thomas D. **JARVIS and Madeline Jarvis,**
**Appellees, (Plaintiffs Below),**

Henry County, Henry County Sheriff's Department and Board of Commissioners of Henry County, Appellees. (Defendants Below).

No. 53S01–9106–CV–499.

Supreme Court of Indiana.

June 28, 1991.

Rehearing Denied Sept. 24, 1991.

Richard L. Fairchild, Stephen J. Peters and William N. Ivers, Stewart & Irwin, Indianapolis, for appellant.

Geoffrey Segar, Ice Miller Donadio & Ryan, Indianapolis, amicus curiae for Indiana State Medical Ass'n.

Henry J. Price, Jerry Garau, Price & Shula, Indianapolis, for appellees.

B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, amicus curiae for Indiana State Police Alliance, Inc.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

This case raises the question of what duty a physician owes to a third person injured by the physician's patient as a result of treatment. We hold that, under the circumstances, there is no duty.

Orville Lynn Webb, M.D., seeks transfer from the Court of Appeals which affirmed the trial court's denial of his motion for summary judgment in *Webb v. Jarvis* (1990), Ind.App., 553 N.E.2d 151. Because we conclude that Dr. Webb was entitled to

summary judgment, we now grant transfer, vacate the opinion of the Court of Appeals, and reverse the trial court.

Dr. Webb presents three issues for resolution, but our resolution of the issue of the extent of a physician's duty to third persons makes it unnecessary to address the remaining two. The facts relevant to our discussion follow.

Dr. Webb was a family practitioner in New Castle, Indiana. In 1977, Michael Neal became his patient. Some time thereafter, Dr. Webb began prescribing anabolic steroids for Neal. Unknown to Dr. Webb, during 1984 and early 1985, Neal battered his wife and once pointed a gun at her head. During this time, Neal also threatened his wife, and told her that he would kill her if she told anyone about his mistreatment of her.

On March 27, 1985, Neal twice threatened his wife with a knife and pulled the trigger of an unloaded gun pointed at her head. Mrs. Neal left her husband and went to the home of her sister and brother-in-law, Tom Jarvis, a state police officer. Mrs. Neal told the Jarvises about these instances and Jarvis reported them to Neal's superiors, Major McCorkle and Sheriff Pearcy of the Henry County Sheriff's Department. At their request, Dr. Webb met with Jarvis, Pearcy and McCorkle at the Sheriff's office where the men spoke with Neal by telephone. Neal agreed to meet with Dr. Webb at Neal's home. At their meeting, Dr. Webb found Neal distraught and was concerned that he might hurt someone. At the end of the meeting, Neal promised to take a sleeping pill that evening and go to bed. He agreed to see a psychiatrist the next day. Dr. Webb called McCorkle at the Sheriff's department and reported that Neal had agreed to get psychiatric help the following morning. Dr. Webb also reported that, while he believed Neal would not do anything if no one approached him, everyone should stay away from him for the time being.

Following Dr. Webb's telephone report, McCorkle called Mrs. Neal and told her that everything was fine. Mrs. Neal telephoned her husband and was assured by him that she could come to their house in order to obtain her clothes. Mrs. Neal asked Jarvis to accompany her, requesting that he bring his revolver because she was still afraid of Neal. Jarvis complied and, while Mrs. Neal gathered her clothes, Jarvis chatted with Neal. At one point, Neal left the room and returned with a rifle. He aimed the rifle at Jarvis and said, "Goodbye, Tommy." Mrs. Neal became hysterical. With Neal's attention thus diverted toward her, Jarvis grabbed Neal. The gun dropped to the floor, and Mrs. Neal ran from the house. Neal broke *free from* Jarvis, and Jarvis also ran from the house. As he was leaving, Neal began shooting. Jarvis was hit once in the right leg before reaching his car, and was hit again after reaching it. As Jarvis struggled to a neighbor's house for assistance, Neal took Jarvis' car and drove to Henry County Memorial Hospital where he shot and killed a nurse before being apprehended by the police.

Jarvis and his wife sought recovery from Dr. Webb on the theory that his overprescribing of anabolic steroids turned Neal into a toxic psychotic who was unable to control his rages. Dr. Webb moved for summary judgment on the premise, among others, that no duty was owed by him to Jarvis. The trial court denied the motion and certified its interlocutory order for appeal to resolve the question of law presented. The Court of Appeals concluded that Dr. Webb owed a duty to Jarvis to refrain from negligently overprescribing steroids to his patient Neal; that Dr. Webb need not have had actual knowledge that Jarvis was a potential victim because of the risk of physical injury to Jarvis; and that Jarvis was a foreseeable plaintiff. *Webb,* 553 N.E.2d at 155–56.

■ We recite first the familiar litany of appellate review. In reviewing the propriety of a ruling on summary judgment, we apply the same standard applicable in the trial court. We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. "Rational assertions of fact and reasonable inferences therefrom are

deemed to be true." *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 440. Any doubt about the existence of a fact or the inference to be drawn from it is to be resolved in favor of the non-moving party. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313. Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be granted. T.R. 56; *Ayres v. Indiana Heights Vol. Fire Dept.* (1986), Ind., 493 N.E.2d 1229, 1234.

Having established the ground rules, our analysis follows.

### I. *Existence of Duty*

In this case, Jarvis urges us to find an affirmative duty on the part of a physician to administer medical treatment to a patient in such a way so as to take into account possible harm to unidentifiable third persons. Stated another way, Jarvis claims that he is entitled to recover from Dr. Webb because Dr. Webb committed malpractice when he prescribed drugs for Neal, and that, as a proximate result of that malpractice, Jarvis was injured. The complaint alleges that Dr. Webb breached a duty owed to Jarvis both by prescribing the drugs for Neal and failing to warn others of Neal's dangerous propensity.

■ Jarvis' action against Dr. Webb sounds in negligence. To premise a recovery on a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706. Our decision addresses only the first requisite element relating to the existence of a duty.

■ Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law. *Miller v. Griesel*, 261 Ind. at 611, 308 N.E.2d at 706; *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280. Recently, this Court analyzed the question of what must be considered in order for a court to impose a duty at common law. See the discussion contained in *Garriup Construction Co. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227–28. We now conclude that three factors must be balanced, viz. (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. Thus, our analysis must examine each of these three factors in order to determine if Dr. Webb owed Jarvis a duty in prescribing medication to Neal.

### A. Relationship Between the Parties

■ The duty of a physician to his patient arises from the contractual relationship entered into between the two of them. The duty has been defined by us as an implied contract that the physician possesses the ordinary knowledge and skill of his profession and will utilize such attributes in a reasonable, diligent, and careful manner in undertaking the care and treatment of his patient. *Worster v. Caylor* (1953), 231 Ind. 625, 110 N.E.2d 337, 339, *overruled on other grounds; C. & S.L.R. Co. v. Henderson* (1957), 237 Ind. 456, 146 N.E.2d 531. It is a duty which flows from that special consensual relationship. In other words, it is a duty premised on privity. Here, there was no contractual or special relationship entered into between Dr. Webb and Jarvis. Clearly, therefore, there was an absence of privity between them.

■ Jarvis, however, argues that privity is not required here because Dr. Webb's treatment of Neal created a situation imminently dangerous to third persons which resulted in personal injury. During the nineteenth century, the common law required privity in order to impose a duty of reasonable care. But this requirement has vanished evolutionarily during the twentieth century. As we approach the next century, it is well-established that privity is not always required. *Citizens Gas & Coke*

*Utility v. American Economy Ins. Co.* (1985), Ind., 486 N.E.2d 998, 1000 (this Court recognized that privity is not required where risk was imminently dangerous to human life); *Barnes v. MacBrown and Company* (1976), 264 Ind. 227, 229, 342 N.E.2d 619, 621 (remote purchaser entitled to sue builder for breach of implied warranty of fitness); *J.I. Case Co. v. Sandefur* (1964), 245 Ind. 213, 221, 197 N.E.2d 519, 522 (manufacturer liable on negligence theory even if no privity where product is imminently dangerous); *Travis v. Rochester Bridge Co.* (1919), 188 Ind. 79, 85–86, 122 N.E. 1, 3 (privity not required if defendant had actual knowledge of danger); *Hiatt v. Brown* (1981), Ind.App., 422 N.E.2d 736, 740 (architect liable for negligent design of airport walkway to airport patron who used the walkway). Thus, we agree with Jarvis that the lack of privity between him and Dr. Webb, alone, does not mandate the conclusion that there was no duty.

Dr. Webb counters Jarvis' contention that lack of privity alone will not defeat his claim by contending that, where privity is lacking, one must have actual knowledge that a third person might reasonably be affected in order to impose a duty. Dr. Webb relies on *Ackerman v. Schwartz* (1989), N.D.Ind., 733 F.Supp. 1231; *Walker v. Lawson* (1987), Ind.App., 514 N.E.2d 629, *rev'd on other grounds* (1988), 526 N.E.2d 968; and *Essex v. Ryan* (1983), Ind.App., 446 N.E.2d 368. Dr. Webb is correct that these cases hold that a professional is not liable to third persons who rely on his conclusions or opinions unless the professional had actual knowledge that those third persons would have such reliance.

■ Jarvis attempts to distinguish these cases because they do not involve the risk of personal injury. He urges us to conclude that, in those instances where privity was lacking, courts have identified a duty if the defendant created a situation which exposed third persons to personal injury, and cites *Hiatt v. Brown*, 422 N.E.2d 736. Jarvis thus invites us to conclude that privity is not required where the danger posed is personal injury, as opposed to economic loss. We decline the invitation. As this Court stated in *Barnes v. MacBrown & Co.*:

> The contention that a distinction should be drawn between mere "economic loss" and personal injury is without merit. Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.

264 Ind. at 230, 342 N.E.2d at 621. The imposition of a duty should not be dependent upon the nature of the damages which flow as a result of its breach. Just as much pain and anguish can result from suffering a devastating economic loss as from physical injury. We see no reason to extend professional liability to unidentified and unknown third persons merely because such persons face a risk of suffering physical injury as opposed to economic loss.

■ Finally, we have held that a professional owes no duty to third persons unless the professional had actual knowledge that those persons would rely on his rendering of professional services. *See, Essex v. Ryan*, 446 N.E.2d 368. In such cases, we have recognized that a duty may be owed to a beneficiary of the consensual relationship, akin to that of a third party beneficiary of a contract, where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons. Here, there is no allegation that Dr. Webb knew or that Jarvis, in fact, relied upon Dr. Webb's rendering of his professional services to his patient, Neal. Therefore, we conclude that the relationship needed to impose a duty on Dr. Webb is lacking.

### B. Foreseeability

■ Dr. Webb argues that Jarvis was not a readily identifiable victim and that any injury to Jarvis by Neal could not have been foreseen. Jarvis counters that he

was a foreseeable plaintiff injured by a foreseeable risk. In analyzing the foreseeability component of duty, we focus on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. "The duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 574. Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. PROSSER & KEETON ON TORTS, § 53 (5th ed. 1984). Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct. HARPER, JAMES & GRAY, The Law of Torts Vol. 3 § 18.2 (2d ed. 1986).

■ Jarvis likens his situation to the victim of a drunk driving accident in a dram shop case. He urges us to impose dram shop liability on physicians and claims that, just as a provider of alcoholic beverages should know that dispensing alcohol to an intoxicated customer creates an unreasonable risk of harm to some unknown third party who may be injured by the intoxicated person, so should Dr. Webb have known that dispensing a certain type of drug to a patient creates an unreasonable risk that some unknown persons may be injured by the medicated patient. We decline to extend the duty of a physician in this context. The causal connection between the use of steroids and violent behavior, if any, is simply not as well-established as are the physical effects of ingesting alcohol. That being the case, we conclude that as a matter of law, it is not reasonably foreseeable that Dr. Webb's prescribing of the medication would put Neal in such a state that he would use a weapon to cause harm to another.

### C. Public Policy

■ "Duty is not sancrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." PROSSER AND KEATON, *supra*, § 53. We conclude that public policy considerations weigh heavily against finding a duty here.

A physician's first loyalty must be to his patient. Imposing a duty on a physician to predict a patient's behavioral reaction to medication and to identify possible plaintiffs would cause a divided loyalty. Were we to impose a duty on a physician to consider the risk of harm to third persons before prescribing medication to a patient, we would be forcing the physician to weigh the welfare of unknown persons against the welfare of his patient. Such an imposition is unacceptable. The physician has the duty to his patient to decide when and what medication to prescribe to the patient, and to inform the patient regarding the risks and benefits of a particular drug therapy. He should fulfill that duty without fear of being exposed to liability to unknown, unidentified third persons.

Moreover, the social utility derived from prescription medication can hardly be disputed and far outweighs the risk of harm to third parties. We can envision a situation where a prescription drug was known to cause possible behavioral side effects in certain patients. The physician may determine that the medication is necessary for his patient, thus putting the physician in an untenable situation: weighing his personal risk of exposure to liability from third persons possibly injured by the patient if the drug were to cause a violent reaction in the patient against his patient's need for the medication. Placing a physician in such an untenable situation is unacceptable.

We believe that public policy and social requirements weigh most heavily against imposing a duty on physicians to consider unknown third persons in deciding whether or not to prescribe a course of drug therapy for a patient.

## II. *Conclusion*

Our analysis of the three factors which must be balanced in order to impose a duty leads us to conclude that generally physicians do not owe a duty to unknown nonpatients who may be injured by the physician's treatment of a patient. This conclusion should not be interpreted as inoculating physicians so as to give them complete immunity against third person claims. In a different factual case, the duty analysis undertaken here could lead to a different conclusion. Under the circumstances of this case, however, the balancing of the relationship between the parties, foreseeability, and public policy results in our concluding that Dr. Webb owed Jarvis no duty in his prescribing of medicine to Neal. Consequently, we hereby accept transfer, vacate the opinion of the Court of Appeals, remand to the trial court, and order the entry of summary judgment in favor of Dr. Webb.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs with separate opinion.

DICKSON, Justice, concurring.

I concur separately to reflect my understanding that by our opinion today this Court does not intend to unequivocally declare that physicians generally have no duty toward unknown third persons foreseeably at risk of injury resulting from the negligent administration or prescription of medication.

In treating patients, the Indiana Medical Licensing Board requires that physicians provide treatment "based upon generally accepted scientific principles, methods, treatments, and current professional theory and practice." 844 Ind.Administrative Code § 5–1–2(d) (1991). Among such generally accepted practice, the Preamble to the American Medical Association Principles of Medical Ethics [1] includes the following declaration:

As a member of this profession, a physician must recognize responsibility not only to patients, *but also to society,* to other health professionals, and to self. (Emphasis added.)

Whether in determining a course of drug therapy for a patient, in implementing such medication program, or in providing adequate warnings to a patient or others, a physician's duty to third persons should be evaluated in the same manner as it is generally. There exists no absolute immunity for that aspect of medical care which relates to prescription drugs. Assuming our opinion is not inconsistent with this view, I concur.

---

1. These Principles of Medical Ethics have also been expressly incorporated in the bylaws of the Indiana State Medical Association. 76 *J.Ind.St. Med.A.* 93 (1983).