**INDIANA DEPARTMENT OF INSURANCE, and John J. Dillon, III, Commissioner of the Indiana Department of Insurance, Appellants–Plaintiffs,**

v.

**ZENITH RE–INSURANCE COMPANY, LTD., an Alien Corporation, Appellee–Defendant.**

No. 49A02–9102–CV–84 [1].

Court of Appeals of Indiana, Fifth District.

Dec. 31, 1991.

Rehearing Denied Feb. 19, 1992.

---

**1.** This case has been diverted to this office by order of the Chief Judge.

Linley E. Pearson, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellants-plaintiffs.

Richard L. Darst, Robert A. Garelick, Thomas C. Kus, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, for appellee-defendant.

RUCKER, Judge.

This is an appeal from a grant of summary judgment. The Indiana Department of Insurance (Department) filed a complaint for preliminary injunction against the Zenith Re–Insurance Company Ltd. (Zenith) seeking to enjoin it from transacting insurance business in the State of Indiana. In response, Zenith filed, among other things, a motion for summary judgment. After conducting a hearing, the trial court granted the motion. On review we are called upon to determine whether Zenith was transacting insurance business in this state within the meaning of the Unauthorized Insurers Act.

We reverse.

## HISTORICAL BACKGROUND

For purpose of clarity, we briefly set forth the historical background of this case, which is not in dispute. In 1980, Congress eliminated the regulatory barriers affecting the trucking industry by amending the Motor Carrier Act.[2] As a result, a relatively new entity emerged from within the trucking industry known as the "owner/operator." Owner/operators are truck drivers who own their own trucks and lease their services to various

**2.** Motor Carrier Act of 1980, Pub.L. 96–296, 94 Stat. 793.

trucking companies. Typically, a trucking company supplies the truck driver with a trailer and freight. The driver in turn delivers the freight and receives a percentage of the freight bill as part of his or her compensation.

Some trucking companies would include the owner/operators under their worker's compensation insurance policies. However, the Internal Revenue Service determined that because the trucking companies paid worker's compensation insurance premiums for the owner/operators, then, for federal tax purposes, owner/operators were considered employees of the trucking companies rather than independent contractors. Consequently, the trucking companies were responsible for withholding various federal employee taxes.

Because of the costs involved in being considered employers for federal tax purposes, trucking companies discontinued including owner/operators under their worker's compensation insurance policies. However, to preclude being held liable for injuries to the owner/operators, many trucking companies required the owner/operators to show proof of worker's compensation coverage as a condition of employment.

## FACTS

In 1982, Affiliated Truckers of America, Inc. (ATA) was incorporated in the State of Indiana. Paul M. Myrehn, a businessman with nearly forty-one years experience in the insurance industry is president, director and sole shareholder of ATA. ATA claims a nationwide membership of approximately fifteen hundred people, all of whom are owner/operator truck drivers. An ATA membership provides various benefits, including group insurance for accidental death and occupational accidents. These policies were obtained through Lloyd's of London and are not the subject of this appeal. In order to avail themselves of the various benefits provided through ATA, members pay an annual membership fee.

In 1989, Myrehn formed the Zenith Re-Insurance Company Ltd. Zenith is located in and incorporated under the laws of the Turks and Caicos Islands in the British West Indies. The company is not licensed to do business in the State of Indiana. Myrehn is president and sole shareholder. Zenith was formed to provide owner/operators with proof of worker's compensation coverage. In essence, Zenith provides ATA members with insurance coverage which indemnifies the trucking companies, with whom the ATA members contract, against a potential worker's compensation claim. According to Myrehn, no such coverage was available in the United States on the commercial market.

As evidence of insurance coverage, Zenith issues to owner/operators Certificates of Indemnification. The certificate names the trucking company as an additional insured and indicates Zenith agrees to indemnify the trucking company for worker's compensation awards required to be paid to ATA members. The Zenith policy is attractive to an owner/operator because trucking companies will accept the certificate as proof the owner/operator is covered by worker's compensation insurance.

Zenith has two employees: Myrehn and an attorney, Finbar F. Dempsey, whose office is located in the Grand Turks and Caicos Islands. On May 18, 1989, Myrehn, acting as president of ATA and while present in Indiana, endorsed a document entitled "APPLICATION FOR GROUP OCCUPATIONAL ACCIDENT ONLY INDEMNITY POLICY TO ZENITH RE-INSURANCE COMPANY LIMITED." The document was mailed to Dempsey in the Turks and Caicos Islands. Myrehn then telephoned Dempsey and authorized him to accept the application. Thereafter, an "acceptance" was mailed from Zenith to Myrehn in Indiana. The policy of insurance took effect May 18, 1990, and ATA mails monthly premiums, apparently from Indiana where it is incorporated, to a Zenith account in a bank in the Grand Turks. Zenith has issued no other policy of insurance and has no intent to do so.

On May 1, 1990, Department filed a complaint for preliminary injunction against Zenith. The complaint alleged Zenith was engaging in the business of insurance in the State of Indiana without proper autho-

rization. Subsequently, Zenith filed its motion for summary judgment. After a hearing, the trial court granted the motion and entered judgment indicating Zenith was not in violation of the Unauthorized Insurers Act. Department now appeals.

When reviewing the propriety of ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. We must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(c) without deciding its weight or credibility. *Id.* Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law should summary judgment be granted. *Id.* at 995.

### DISCUSSION AND DECISION

#### I.

The material facts of this case are undisputed. Rather, the resolution of this matter turns on how these facts relate to the Unauthorized Insurers Act which dictates in relevant part:

Any of the following acts in this state effected by mail or otherwise by or on behalf of an unauthorized insurer constitutes the transaction of an insurance business in this state....

(5) The issuance or delivery of contracts of insurance to residents of this state or to persons authorized to do business in this state.

Ind.Code § 27–4–5–2(b). Zenith contends it was not doing business in the State of Indiana because it engaged in no acts in this state that amounted to the issuance or delivery of an insurance contract. On the other hand, Department argues the actions of Zenith clearly demonstrate the delivery of an insurance contract within the meaning of the statute.

■ No Indiana court has interpreted the word "delivery" as it applies to I.C. § 27–4–5–2(b). However, when a particular word is not defined by statute, we are bound to give the word its plain and ordinary meaning. *Board of School Trustees of School Town of Speedway v. Indiana Educ. Employment Relations Bd.* (1986), Ind.App., 498 N.E.2d 1006, *trans. denied.* A statute must be held to mean what it clearly and plainly expresses; its plain, clear, and obvious meaning may not be enlarged or restricted. *Vanderburgh County v. West* (1991), Ind.App., 564 N.E.2d 966, *trans. denied.*

"Delivery" is defined as, "1. The act of delivering or conveying ... 5. The act of transferring to another. 6. A giving up; surrender." The American Heritage Dictionary Of The English Language 349 (1981). One definition of delivery found in Black's Law Dictionary is, "The act by which the res or substance thereof is placed within the actual or constructive possession or control of another." Black's Law Dictionary 428 (6th ed. 1990).

■ In the case before us, Zenith argues the contract of insurance with ATA was applied for and accepted in the Grand Turks. Therefore, concludes Zenith, the place of "delivery" was the Grand Turks and not the State of Indiana. We do not agree.

The facts here are clear that Paul Myrehn, sole owner of both Zenith and ATA, completed the application for insurance in the State of Indiana, telephoned Dempsey in the Grand Turks and authorized him to "accept" the application. This presumed authorization to accept the insurance application was little more than sleight of hand. Zenith was born with the express purpose of issuing an indemnity policy of insurance to ATA, an Indiana corporation. Indeed, the record before us shows the policy of insurance, the application for insurance, and Zenith's certificate of incorporation all bear the same date, May 18, 1989. The application for insurance was accepted the moment Myrehn signed it. Moreover, Myrehn testified that while acting as an official of ATA, the "written acceptance," in the form of a contract, was mailed to him in Indianapolis from the Grand Turks. *Record* at 287–88.

It is clear to this court that by the use of the mail, Zenith placed its policy of insurance in the actual possession of ATA while

ATA was present in the State of Indiana. By employing the clear and ordinary meaning of the word "delivery," we hold Zenith delivered a policy of insurance to ATA. In doing so, Zenith committed an act prohibited under I.C. § 27–5–4–2(b)(5).

## II.

■ Zenith next argues it is not bound by the provisions of the Unauthorized Insurers Act because it only issued one policy of insurance and to only one person. According to Zenith, the Act requires more than one transaction. In support of its argument, Zenith focuses on the plural "contracts," "residents" and "persons" contained in I.C. § 27–5–4–2(b)(5). Zenith's argument is without merit.

■ Where the legislature declares that a term shall receive a certain construction, the court is bound by that construction although the language may otherwise be held to mean something different. *Spaulding v. International Bakers Service, Inc.* (1990), Ind., 550 N.E.2d 307. Here, the Unauthorized Insurers Act contains a definition provision which dictates in part:

(h) The term person includes individuals, corporations, associations and partnerships; personal pronoun includes all genders; *the singular includes the plural and the plural includes the singular.*

I.C. § 27–1–2–3 (emphasis added). Zenith's issuance of a single insurance policy is sufficient to trigger the provisions of the Act.

■ When construing a statute our primary objective is to ascertain and give effect to the intent of the legislature. *Highland Realty, Inc. v. Indianapolis Airport Authority* (1979), 182 Ind.App. 439, 395 N.E.2d 1259. In the case before us, the intent of the legislature in enacting the Unauthorized Insurers Act is clear:

[T]o subject certain insurers to the jurisdiction of the insurance commissioner and the courts of this state in suits by or on behalf of the state. The general assembly declares that it is concerned with the protection of residents of this state against acts by insurers not authorized to do an insurance business in this state, by the maintenance of fair and honest insurance markets, by protecting authorized insurers which are subject to regulation from unfair competition by unauthorized insurers, and by protecting against the evasion of the insurance regulatory laws of this state.

Ind.Code § 27–4–5–1. Hence, the regulation of insurance practice in this state protects the public as well as the insurer. *Vernon Fire & Cas. Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173.

There is no question Zenith is not authorized to do business in this state. Zenith has never filed an application for permission to do business in Indiana, nor has it ever received a Certificate of Authority to do business in this state. Essentially, Zenith is totally unregulated by this state's insurance laws. Neither the residents of Indiana, nor properly regulated insurers are protected from Zenith's insurance activities. Certainly, the Unauthorized Insurers Act was intended to address the very problem presented in this case.

Even if we accept as true the assertion that Zenith was formed to fill a void in the trucking industry and that the indemnity policy Zenith offered to ATA members was unavailable elsewhere in the United States, Zenith nonetheless is required to comply with the insurance regulations of this state if it expects to do business here.

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SHARPNACK, J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent.

Zenith, an insurer located and incorporated in the Turks and Caicos Islands, issued a single policy of insurance to ATA, an Indiana corporation. The application was accepted by Dempsey in Turks and Caicos

on Zenith's behalf. A copy of the insurance contract was mailed to Myrehn in Indiana at a later date. No other policies have been, or will be, issued in Indiana or anywhere else. In my opinion, this single contact with Indiana does not constitute the transaction of an unauthorized insurance business under IND.CODE 27–4–5–2. *See, Johnson v. Universal Underwriters, Inc.* (7th Cir.1960), 283 F.2d 316 (holding an Indiana insurer was not transacting business in Kentucky when its only contact was the mailing of an insurance contract to an insured residing in Kentucky).

The State makes reference to the provision of insurance by Zenith as a "scam opportunity". Brief of Appellant at 16. The majority makes reference to "sleight of hand". Op. at 204. These references appear to be directed at the issue of "alter ego" as discussed in *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), 175 Ind.App. 416, 372 N.E.2d 742, *reh. denied,* and like cases. This issue was not raised in the trial court and was not argued to this court. Therefore, it is not an issue for our consideration.

Further, even if Zenith is Myrehn's "alter ego", I would deem that fact of no great moment. Certainly, there is no fraud or deception involved, even if Myrehn ultimately profits from Zenith's formation and operation.

Under the facts here presented, Myrehn attempted to purchase the kind of insurance coverage he needed, but could not find an insurance company which would sell it to him. He did not need workmen's compensation insurance, a common commodity. His business required insurance which would indemnify those organizations purchasing the services of the independent owner/operators Myrehn's organization represented from loss if some court or agency declared an owner/operator was in fact an employee of the purchasing organization rather than an independent contractor. Although a remote possibility, it is a possibility under the facts of this case nevertheless, and one the purchasers doing business with Myrehn and those his organization represented felt they must be protected against.

Myrehn's formation of Zenith filled a requirement that could be filled from no other source. He merely "found a need and filled it", one of the prime entrepreneurial formulas for establishing a successful business, and we should always remember, successful businesses furnish the fuel which drives the economic engine of this country.

I would affirm the trial court.