456 So.2d 432 (1984)
J. Russell FORLAW, M.D., Petitioner,
v.
Walter FITZER, As the Personal Representative of the Estate of Diane Fitzer, Deceased, Respondent.
No. 64258.
Supreme Court of Florida.
August 30, 1984.
Rehearing Denied October 22, 1984.
*433 Marjorie Gadarian Graham of Jones & Foster, West Palm Beach, for petitioner.
Montgomery, Lytal, Reiter, Denney & Searcy, and Edna L. Caruso, West Palm Beach, for respondent.
PER CURIAM.
This case is before us to answer a question certified by a district court to be of great public importance. Fitzer v. Forlaw, 435 So.2d 839 (Fla. 4th DCA 1983). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
Terry Loomis struck and killed twelve-year-old Diane Fitzer as she rode her bicycle on the shoulder of a road April 19, 1979. Loomis was under the influence of Quaaludes and alcoholic beverages at the time of the accident. Diane's father filed suit against Dr. Forlaw and his professional association. The second amended complaint alleged that Dr. Forlaw had prescribed Quaaludes to Loomis at Loomis's insistence on two occasions, that Dr. Forlaw knew or should have known that Loomis was addicted to Quaaludes, and that the doctor failed to warn Loomis not to drink or drive while under the influence of the drug. The complaint alleged that Loomis had gone to the doctor the first time in December 1978, complaining of feeling "hyper," and adamantly demanded a prescription for Quaaludes, threatening suicide if he did not get relief. According to the complaint, Dr. Forlaw then prescribed thirty-six Quaaludes, 150 mg. per unit. Loomis went to the doctor again in March 1979, a month before the accident, and received a prescription for fifty Quaaludes, 300 mg. per unit.
The trial court granted a motion to dismiss the complaint because it failed to state a cause of action. The Fourth District reversed, finding that "if a doctor prescribes Quaaludes to a known drug addict, it is foreseeable that the addict may drive an automobile under the influence and cause injury to innocent third parties." 435 So.2d at 839. On rehearing, the district court certified the following question:
IS A PHYSICIAN WHO PRESCRIBES QUAALUDES TO A KNOWN DRUG ADDICT LIABLE TO A THIRD PARTY FOR THE NEGLIGENCE OF THE PATIENT IN DRIVING A CAR WHILE UNDER THE INFLUENCE OF THE DRUG?
Id. at 840.
Although the specific issue may be of first impression in Florida, this Court recently recognized liability to third parties in a somewhat analogous situation. In Migliore v. Crown Liquors, Inc., 448 So.2d 978 (1984), this Court found that a vendor who sells intoxicating beverages to a minor contrary to section 562.11, Florida Statutes (Supp. 1978), may be liable to third persons injured by the minor's operation of a vehicle. We found that Florida common law recognized the cause of action, based on a line of district court cases. The defendant argued that no cause of action existed until passage of chapter 80-37, section 1, Laws of Florida (codified at section 768.125, Florida Statutes (1983)), which occurred after the accident in Migliore. We held that the *434 statute limited the cause of action previously recognized by the courts.
No allegation of negligence per se is contained in the complaint under review in this case. However, the respondent urges in his argument to this Court that the facts alleged in the complaint would support the conclusion that the defendant violated a law, section 893.12, Florida Statutes (1977). A physician who prescribes a controlled drug in bad faith or outside the course of professional practice acts in violation of the statute, as he falls outside the exception of section 893.05 allowing good faith prescription of such drugs in the course of professional practice. Cilento v. State, 377 So.2d 663 (Fla. 1979). We do not find that the facts alleged show violation of the statute. This case is therefore not controlled by Migliore; the issue before us is not whether a physician in violation of section 893.13 is liable for the injuries of a third party. The certified question likewise does not state the physician is in violation of statute. Accordingly, we address the question of whether prescribing a controlled drug to a known addict is alone enough to render a physician liable to third parties. We conclude that the act of merely prescribing is not negligent and therefore cannot be the basis for finding liability.
There is nothing inherently improper in prescribing drugs to a drug addict. Florida cases have not addressed the question of when prescriptions to known addicts are improper; those cases which have involved improper prescription have been resolved without determining the bounds of propriety. See Cilento v. State, 377 So.2d 663, 665 (Fla. 1979) (physician pleaded nolo contendere to violation, challenged constitutionality of chapter 893); State v. Weeks, 335 So.2d 274 (1976) (constitutional challenge); Gallo v. State Board of Medical Examiners, 257 So.2d 97 (Fla. 3d DCA 1972) (review of administrative decision, limited to determining whether decision was supported by substantial competent evidence). While Florida case law offers no guidance, the federal courts have considered the question we raise, in construing the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, Public Law Number 91-513, 84 United States Statutes at Large 1242 (1970) (codified as amended at 21 United States Code sections 801-966 (1982)). As we noted in Cilento, chapter 893 of the Florida Statutes is modeled on the federal act, and we are justified in turning for guidance to decisions of the federal courts construing the federal act. Cf. State ex rel. Feldman v. Kelly, 76 So.2d 798 (Fla. 1954).
In Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819 (1925), the indictment alleged that the physician gave his patient narcotics which the patient would administer to herself out of the doctor's control "for the sole purpose of relieving conditions incident to addiction and keeping herself comfortable." Id. at 17, 45 S.Ct. at 448. The Court rejected finding criminal liability, distinguishing the case from an earlier decision which found liability where a physician prescribed 3,000 doses of drugs to an addict:
The enormous quantity of drugs ordered, considered in connection with the recipient's character, without explanation, seemed enough to show prohibited sales and to exclude the idea of bona fide professional action in the ordinary course. The opinion cannot be accepted as authority for holding that a physician, who acts bona fide and according to fair medical standards, may never give an addict moderate amounts of drugs for self-administration in order to relieve conditions incident to addiction... . [I]f the [federal drug law] had such scope it would certainly encounter grave constitutional difficulties.

Id. at 22, 45 S.Ct. at 450 (emphasis added). While the Court obviously was not construing the current federal act, the Linder holding is still followed by the federal courts. The Fifth Circuit affirmed the continued viability of the rule in United States v. Collier, 478 F.2d 268 (5th Cir.1973):
A physician is restricted to dispensing or prescribing drugs in the bona fide treatment *435 of a patient's disease, including a dispensing of a moderate amount of drugs to a known addict in a good-faith attempt to treat the addiction or to relieve conditions or suffering incident to addiction. However, under the guise of treatment a physician cannot sell drugs to a dealer nor distribute drugs intended to cater to cravings of an addict. Congress did not intend for doctors to become drug "pushers."
Id. at 272 (citations omitted).
In the complaint in the instant case, if the allegations regarding Doctor Forlaw's knowledge of Loomis's addiction are eliminated, little remains on which to conclude that the doctor acted in bad faith or beyond the scope of his practice when he prescribed the drug. The complaint alleges Loomis asked for the drug to help him sleep in his first meeting with the doctor December 7, 1978. Dr. Forlaw then prescribed thirty-six Quaaludes, enough for thirty-six nights of methaqualone-induced sleep. More than ninety days later, Loomis sought more of the drug. The length of time between the first and second requests for the drug, considering the relatively small number of pills provided on the first occasion, would not indicate to the doctor that Loomis had abused the drug, and, if any conclusion could be drawn, might indicate that Loomis was using the drug only when he needed it, "to relieve conditions incident to addiction," Linder, assuming the doctor knew Loomis was addicted. Nothing would therefore seem improper in providing a moderately increased number of doses at a higher strength.
The complaint also alleges that Dr. Forlaw failed to perform a physical examination on Loomis. This fact alone is not enough to conclude the doctor wrote an improper prescription. For example, in United States v. Moore, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), a physician was convicted of prescribing methadone in a manner which exceeded the bounds of his practice, a violation of the federal equivalent to sections 893.05 and 893.13 of the Florida Statutes. The facts of the case show that the doctor, during a five-and-one-half month period, wrote more than 11,000 prescriptions for some 800,000 methadone tablets, frequently writing more than 100 prescriptions a day. His fee was based solely on the size of the prescription, only a cursory physical examination was made (if any was made at all), the results of the few tests made were ignored, no attempt was made to control who used the drug by requiring patients to take the drug at the clinic, and no attempt was made to control dosage as the doctor prescribed as much and as often as patients demanded. Under those conditions, the Court found sufficient evidence to conclude the doctor acted outside the course of his practice.[1]
We therefore answer the certified question in the negative. Mere prescription of *436 a controlled drug to a known addict, without circumstances showing the physician has acted in bad faith or beyond the scope of his practice, will not render the doctor liable to third parties injured by the addict's abuse of the drug.[2]
Accordingly, the certified question is answered in the negative and the district court decision is quashed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] In none of the federal cases we have examined has a failure to conduct a physical examination, alone, been the basis for finding a physician criminally liable under 21 U.S.C. § 841, the functional equivalent to § 893.13, Fla. Stat. See, e.g., United States v. Harrison, 651 F.2d 353 (5th Cir.), 454 U.S. 1126, 102 S.Ct. 975, 71 L.Ed.2d 113 (1981) (evidence sufficient to submit charges to jury where testimony showed doctor made up names for prescriptions, asked "patients" to supply names for same purpose, and alluded to difficulties he might have by having no files for the fictitious names); United States v. Rogers, 609 F.2d 834 (5th Cir.1980) (doctor failed to examine agent/"patients" and prescribed indiscriminately, soliciting patients to name drugs they wanted and otherwise indicating lack of good faith prescription for medical purposes); United States v. Smurthwaite, 590 F.2d 889 (10th Cir.1979) (evidence sufficient to support conviction where naturopathic physician prescribed amphetamines on several occasions without physical examination or medical history, and defendant also told agent/"patients" he knew they were abusing the drugs); United States v. Kirk, 584 F.2d 773 (6th Cir.), cert. denied, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978) (evidence sufficient to support conviction where patient was never adequately examined and received prescription for choice of drugs on repeated occasions, and evidence showed doctor had written more than 7,000 prescriptions for controlled drugs over three-year period); United States v. Rosen, 582 F.2d 1032 (5th Cir.1978) (doctor prescribed in return for services of government agents in searching for wiretaps, no pretense of legitimate medical purpose); United States v. Larson, 507 F.2d 385 (9th Cir.1974) (doctor prescribed inordinate amounts of drug, wrote more than one prescription on occasion to "spread" them out, advised patient to fill prescriptions at different pharmacies, and used street names for drugs); United States v. Badia, 490 F.2d 296 (1st Cir.1973) (doctor dispensed drug three times to agent without examination, but also indicated he knew drugs were not going to be used therapeutically); United States v. Bartee, 479 F.2d 484 (10th Cir.1973) (doctor prescribed inordinate amounts of controlled drugs without physical examination after agent/"patients" told doctor they sold or traded drugs obtained with prior prescriptions, and doctor advised agents to patronize several pharmacies to avoid suspicion).

A case which illustrates the line a jury may draw between a proper and an improper prescription is United States v. Jones, 570 F.2d 765 (8th Cir.1978). The defendant physician was acquitted on one count of prescribing Quaaludes outside the course of medical practice, convicted on a second count. The acquittal was for the prescription issued on an undercover police officer's first visit to the doctor. The doctor took some information, including the statement by the police officer that he worked in a factory and needed something for sleep. The doctor prescribed thirty Quaaludes and advised the "patient" to have the prescription filled at a specific pharmacy if he had trouble getting it filled. The conviction was for the prescription issued during the second office visit. During the second visit, the doctor took no medical history, made no examination, and was told by the "patient" that he had given some of the pills from the prior prescription to his wife. The doctor wrote a prescription for thirty more Quaaludes without being asked. Additional evidence showed that the doctor had issued 478 prescriptions during a 20 month period which had been filled at one drug store, the one recommended by the doctor on the first undercover visit, and that prescriptions during one three-month period accounted for almost half the drug store's volume for controlled drug sales in that period.
[2] We do not address the question of whether circumstances constituting a violation of section 893.13 would suffice to allow liability to be imposed on a physician for injuries suffered by third parties. We reserve a decision on that issue for another day.