IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 28, 2001 Session

**JUDY C. BURROUGHS, INDIVIDUALLY, AND AS SURVIVING SPOUSE
AND PERSONAL REPRESENTATIVE OF THE ESTATE OF
HAROLD L. BURROUGHS, DECEASED
v.
ROBERT W. MAGEE, M.D.**

**Appeal from the Circuit Court for Lauderdale County
No. 5005     Joseph H. Walker, Judge**

---

**No. W2001-00238-COA-R3-CV - Filed June 11, 2002**

---

This is a personal injury and wrongful death case. The plaintiff and her husband were involved in an automobile accident. The plaintiff sued the driver of the other vehicle for her husband's wrongful death as well as for injuries she sustained in the accident. The plaintiff named the driver's physician as an additional tortfeasor, alleging that the physician negligently prescribed drugs to a known drug addict, negligently prescribed two contraindicated drugs, and negligently failed to warn his patient of the risks of driving while under the influence of the drugs. The trial court granted the physician's motion for summary judgment on the grounds that the physician had no duty to unidentifiable third parties such as the plaintiff. We affirm in part and reverse in part, finding that the physician owed a duty to the plaintiff and the decedent to warn his patient of the risks of driving while under the influence of the prescribed drugs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,
Reversed in Part and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

J. Houston Gordon and Jason G. Whitworth, Covington, Tennessee, for the Appellant, Judy C. Burroughs.

Hubert B. Jones and Gary H. Nichols, Dyersburg, Tennessee, for the Appellee, Robert W. Magee, M.D.

**OPINION**

This is a personal injury and wrongful death lawsuit. On July 31, 1997 Plaintiff/Appellant Judy Burroughs ("Burroughs") and her husband, decedent Harold Burroughs, were involved in an automobile accident with a second vehicle driven by Roger Hostetler ("Hostetler") at the

intersection of U.S. 51 and State Route 87 in Lauderdale County, Tennessee. It is undisputed that Hostetler ran a stop sign and that his pick-up truck hit the driver's side of the Burroughs' car. Hostetler maintains that the accident was caused by a sudden brake failure.

Defendant/Appellee Robert Magee, M.D. ("Dr. Magee") is a physician who treated Hostetler prior to the accident. Magee had practiced with the Dyersburg Medical Group since July 1996. The day before the accident, Hostetler went to the Dyersburg Medical Group clinic, complaining of persistent weakness in his upper extremities, recurrent headaches, and muscle cramps. Dr. Magee attributed these symptoms to heat exhaustion.

Dr. Magee prescribed the muscle relaxant Carisprodol ("Soma") to treat Hostetler's cramps and muscle spasms. Dr Magee also prescribed Esgic-Plus to treat Hostetler's headaches. Both Soma and Esgic-Plus are central nervous system depressants which may impair the user's ability to drive. When the drugs are used simultaneously, the impairment may be enhanced. The evidence is disputed whether Dr. Magee verbally warned Hostetler to avoid driving while taking the drugs. The evidence is also disputed whether Dr. Magee verbally warned Hostetler that the impairment is enhanced when the two drugs are taken together.

On the day of the accident, Hostetler took a tablet each of Esgic-Plus and Soma with his breakfast and then a tablet of Esgic-Plus with his lunch sometime between 1:00 p.m. and 2:00 p.m. Hostetler did not consume any alcoholic beverages or, aside from the Esgic-Plus and Soma, did not use any other drug on the day of the accident. At the scene of the accident, however, Hostetler was described as appearing to be under the influence of drugs or alcohol. Hostetler told the investigating trooper, John Marvin, that he was on medication for his injured back but that he did not think that the medication affected his ability to drive.

It was later learned that Hostetler had previously been treated by the Dyersburg Medical Group clinic, beginning in 1986, after suffering leg and back injuries from a fall. Earlier notes from Hostetler's medical record indicated that Hostetler repeatedly visited the clinic to obtain refills of his prescription for Soma. Doctors eventually became suspicious and, on three separate occasions in 1995, refused to prescribe Soma to Hostetler out of fear that he was abusing the drug. Most relevant is a note written by Dr. C. R. Webb from August 1995, which stated:

> This man has been taking Soma tablets 350 mg p.o. while driving a (sic) over the road truck for several years. He comes today in Dr. Hunt's absence demanding that I prescribe the Soma for him and I have declined to do so because I think this has reached the stage of substance abuse and I don't feel that I should prescribe this medication for him to continue taking while driving a rig on the highways across the country.

Dr. Magee did not review these notes before prescribing Soma and Esgic-Plus to Hostetler.

Burroughs and her husband both suffered significant injuries as a result of the accident. Harold Burroughs ultimately died from his injuries.

Thereafter, Burroughs filed a wrongful death and personal injury lawsuit against Hostetler, alleging that Hostetler ignored or failed to heed a stop sign before pulling into the intersection or, in the alternative, failed to properly inspect and maintain his brakes. Subsequently, Burroughs amended her complaint to join Dr. Magee as an additional defendant. The amended complaint alleged that Dr. Magee created an unreasonable risk of harm to Burroughs and her husband by prescribing drugs to a suspected drug abuser, and, in addition, failed to warn his patient of the drugs' debilitative effects, especially when used in combination. The amended complaint alleged that, in either case, Dr. Magee violated the recognized standard of medical care for a family practitioner.

In response, Dr. Magee filed a motion for summary judgment, asserting that "he did not owe a duty of care to plaintiff or plaintiff's decedent in this case" and, furthermore, that his actions in prescribing the drugs were not the cause in fact or the proximate cause of the accident. The trial court granted Dr. Magee's motion, holding that Dr. Magee "did not owe a duty of care to plaintiffs, who were not foreseeable, readily identifiable third persons, and their interests were not entitled to protection at the hands of that defendant under the facts." (R. 412) From the trial court's order granting summary judgment, Burroughs now appeals.

On appeal, Burroughs argues that the trial court erred in finding that Dr. Magee did not owe a duty to her and her husband. Burroughs argues that Dr. Magee owed her a duty to (1) warn his patient of the risks of driving while under the influence of the prescription drugs; (2) avoid prescribing drugs to a patient who he knew or should have known was abusing the drugs; (3) avoid prescribing drugs to a truck driver who, because of his drug abuse, was a recognized danger to other motorists; and (4) avoid prescribing drugs which are contraindicated and have increased detrimental effects on the user's driving abilities.[1]

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.*

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the

---

[1] We find no evidence in the record supporting Burroughs' allegation that the two drugs, Soma and Esgic-Plus, are medically contraindicated. Rather, the evidence shows simply that the depressing effects on the user's central nervous system may be enhanced when the drugs are taken together. Therefore, we consider this issue as it relates to Dr. Magee's alleged duty to warn his patient of the risks of driving while using the two drugs simultaneously.

trial court's grant of summary judgment is *de novo* on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

A claim based on negligence requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. ***Turner v. Jordan***, 957 S.W.2d 815, 818 (Tenn. 1997).

The existence of a duty is a question of law to be decided by the court. ***Id***. Only after it is established that the defendant owed the plaintiff a legal duty does the fact finder determine whether the defendant violated that duty. *See **Lindsey v. Miami Dev. Corp.***, 689 S.W.2d 856, 859 (Tenn. 1985). A duty generally arises where the "defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property." ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995). In deciding whether a legal duty exists, the court should consider whether:

> . . . such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others–or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court...A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant.

***Lindsey***, 689 S.W.2d at 859 (quoting Prosser and Keeton, Torts § 37, p. 236 (5th ed. 1984)). "Thus, the imposition of a legal duty reflects society's contemporary policies and social requirements concerning the rights of individuals and the general public to be protected from another's act or conduct." ***Bradshaw v. Daniel***, 854 S.W.2d 865, 870 (Tenn. 1993).

Generally a person has a duty to use reasonable care to refrain from conduct that will foreseeably cause harm to others; however, there is no such duty to protect others from the dangerous conduct of third persons unless a "special relationship" exists either between the actor and the third person or the actor and the person harmed. ***Turner***, 957 S.W.2d at 818; Restatement (Second) of Torts § 315 (1964). Where the actor stands in a special relationship to the person who is the source of the danger, the actor may, under certain limited circumstances, be held liable for his negligence in failing to prevent the person from causing physical harm to others. ***Bradshaw***, 854 S.W.2d at 871 (citing ***Tarasoff v. Regents of Univ. of Cal.***, 551 P.2d 334, 343 (Cal. 1976)). Thus, the Tennessee Supreme Court has "recognized that a physician may owe a duty to non-patient third parties for injuries caused by the physician's negligence, if the injuries suffered and the manner in which they occurred were reasonably foreseeable." ***Id.*** at 870. *See also **Wharton Transp. Corp. v. Bridges***, 606 S.W.2d 521, 526 (Tenn. 1980) (holding that defendant physician may be held liable in indemnity to his patient's employer where the physician negligently certified his patient as fit to drive a commercial truck and the patient thereafter was involved in an accident proximately caused by the patient's physical disabilities which the physician failed to discover).

We first address whether Dr. Magee had a duty to the motoring public, including Burroughs and her deceased husband, to warn his patient of side effects of the prescribed drugs and the associated risks of driving while under their influence. In holding that Dr. Magee's duty to warn only extended to identifiable third parties, the trial court relied on the Tennessee Supreme Court's decision in *Bradshaw*. In *Bradshaw*, a patient of the defendant physician died from Rocky Mountain Spotted Fever. The Court discussed whether the defendant physician owed a legal duty to the wife of the patient to advise her of her own risk of exposure to Rocky Mountain Spotted Fever. *Bradshaw*, 854 S.W.2d at 870-872. The *Bradshaw* Court first noted that "as a general rule, under the common law, one person owed no affirmative duty to warn those endangered by the conduct of another." *Id.* at 870. However, the Court further noted that "the existence of the physician-patient relationship is sufficient to impose upon a physician an affirmative duty to warn identifiable third persons in the patient's immediate family against foreseeable risks emanating from a patient's illness." *Id.* at 872. Thus, in some cases, such as those involving contagious diseases, a physician may have a duty to warn those "identifiable" persons who are particularly at risk.

Although the trial court relied on *Bradshaw*, it is inapplicable in this case. Burroughs does not allege that Dr. Magee had a duty to warn her or her husband, which was the issue in *Bradshaw*. Rather, Burroughs contends that Dr. Magee owed a duty to protect against foreseeable harm to other motorists by warning *his patient* against the risks of driving while under the influence of the prescribed drugs.

The facts in this case are more analogous to those in the Tennessee Supreme Court's recent decision in *Estate of Amos v. Vanderbilt University*, 62 S.W.3d 133 (Tenn. 2001). In *Estate of Amos*, in 1984, the patient had been given a blood transfusion infected with HIV by the defendant medical center. *Id.* at 135. At the time she received the blood transfusion, the patient was unmarried. *Id.* In 1987, the medical center began offering free HIV testing to patients who had received blood transfusions at its facilities in the past; however the medical center did not undertake to identify and warn all prior patients of their potential exposure to HIV from contaminated transfusions. *Id.* The patient married in 1989 and gave birth to a daughter later that year. *Id.* Soon after birth, the daughter died as a result of an AIDS-related virus. *Id.* The patient then underwent an HIV examination and learned that she was HIV positive. *Id.* The patient and her husband later sued the medical center, alleging that it negligently failed to warn the patient of her risk of contracting HIV from her previous blood transfusion. *Id.* A jury verdict was returned in favor of the patient's husband. On appeal, the intermediate appellate court reversed, finding that the husband "was not identifiable during the period of inaction so as to justify imposing a duty on Vanderbilt." *Estate of Amos v. Vanderbilt Univ, Inc.*, No. M1999-00998-COA-R3-CV, 2000 WL 336733, at * 4 (Tenn. Ct. App. March 31, 2000). The case was then appealed to the Tennessee Supreme Court. In its opinion, the Tennessee Supreme Court first noted that "[t]he duty contemplated here is not one to warn Mr. Amos himself of Mrs. Amos's exposure to HIV but to warn Mrs. Amos so that she might take adequate precautions to prevent transmission of the disease to Mr. Amos and their child." *Estate of Amos*, 62 S.W.3d at 138. In reversing the decision of the intermediate appellate court, the Supreme Court held that "[i]t was reasonably foreseeable that Mrs. Amos would one day marry and have a family. Her future husband and daughter were within the class of identifiable third persons at risk for exposure to HIV." *Id.*

In addition, in ***Wharton Transport Corp. v. Bridges***, 606 S.W.2d 521, 527 (Tenn. 1980), the Tennessee Supreme Court cited with approval the case of ***Kaiser v. Suburban Transportation System***, 398 P.2d 14 (Wash. 1965).  In ***Kaiser***, the Washington Supreme Court found that the defendant physician could be held liable to a third party injured in a bus crash. The bus driver had lost consciousness while under the influence of medication prescribed by the defendant physician. ***Id.*** at 15. The ***Kaiser*** court noted evidence in the record that the defendant physician failed to give the driver any warning of the drug's dangerous side effects.  ***Id.*** at 16.  The court found that the defendant physician could be held liable "if the jury finds he failed to give warning of the side effects of the drug, since the harm resulting to the plaintiff was in the general field of danger, which should reasonably have been foreseen by the doctor when he administered the drug." ***Id.  See also Gooden v. Tips***, 651 S.W.2d 364 (Tex. App. 1983).  In this case, as in ***Kaiser, Estate of Amos*** and ***Wharton***, it was reasonably foreseeable that other persons could be injured as a result of Dr. Magee's alleged failure to warn Hostetler and, further, Burroughs and her deceased husband were within the class of "identifiable" persons placed at risk.

In order to establish a duty, the Court must not only determine that the harm was foreseeable; it must also weigh the foreseeability and gravity of the possible harm against the burden imposed upon the defendant in taking reasonable precautions to guard against the harm.  ***McClung v. Delta Square Ltd. P'ship***, 937 S.W.2d 891, 904 (Tenn. 1996).  A physician already operates under a duty to warn his patient of any dangerous side effects of drugs he prescribes.  Consequently, expanding the physician's scope of liability "to include injuries to foreseeable victims other than the patient" does not significantly alter the degree of medical care owed to the patient.  ***See Myers v. Quesenberry***, 193 Cal. Rptr. 733, 736 (Cal. Ct. App. 1983).  However, if the prescribing physician does not provide his patient with an adequate warning of the risks of driving while under the influence of prescribed drugs, the gravity of harm to third-party motorists is significant.

Dr. Magee argues that several other jurisdictions hold that a physician or other medical provider does not owe a duty to a third-party motorist when prescribing drugs to his patient.  ***See Shortnacy v. N. Atlanta Internal Med., P.C.***, 556 S.E.2d 209 (Ga. Ct. App. 2001); ***Lester v. Hall***, 970 P.2d 590 (N.M. 1998); ***Conboy v. Mogeloff***, 567 N.Y.S.2d 960 (N.Y. App. Div. 1991); ***Kirk v. Michael Reese Hosp. and Med. Ctr.***, 513 N.E.2d 387 (Ill. 1987); ***Forlaw v. Fitzer***, 456 So. 2d 432 (Fla. 1984).  We note that several of these decisions do not, as here, involve the physician's failure to warn his patient of the risk of driving while under the influence of the prescribed drugs.  ***See Shortnacy***, 556 S.E.2d at 211 ("The injection record states that [patient] was told that he should not drink alcohol, drive, or operate heavy or light machinery for 12 hours after the injections."); ***Forlaw***, 456 So. 2d 432 (addressing physician's prescribing drugs to a known drug abuser rather than a failure to warn).

Regardless, in considering whether a duty should be found, it is clear that Burroughs and her husband were in the class of identifiable third persons who could be harmed by Dr. Magee's alleged failure to warn Hostetler of the risks of driving while under the influence of the prescribed drugs, and that the harm was therefore reasonably foreseeable.  The potential harm to motorists such as Burroughs and her husband was substantial.  Finally, expanding the physician's scope of potential liability to include injuries to persons other than Hostetler does not alter the physician's duty to his

patient and does not significantly increase the burden on the physician. All of these factors militate in favor of finding a duty. Therefore, we conclude that, under the facts of this case, Dr. Magee owed a duty to Burroughs and her husband to warn his patient, Hostetler, of the risks of driving while under the influence of the prescribed drugs, and of the enhanced effects of taking the two prescribed drugs together. Consequently, the trial court's order granting summary judgment to Dr. Magee is reversed insofar as it relates to the plaintiff's claims that Dr. Magee failed to warn Hostetler of the risks of driving while under the influence of Soma or Esgic-Plus, as well as the enhanced effect and increased risk of driving if the two are taken concurrently.[2]

We next address whether Dr. Magee had a duty to third parties to use reasonable care when prescribing drugs to a patient who was a suspected drug abuser and a potential danger to other motorists. It must be noted that "[t]here is nothing inherently improper in prescribing drugs to a drug addict." *Forlaw*, 456 So. 2d at 434. Indeed, as it relates to the physician's medical care to his patient, the physician may have legitimate medical reasons for prescribing drugs to a suspected or known drug abuser. Therefore, if such a duty were found, it would require the physician, before prescribing drugs to his patient, to make a decision based not only on his patient's best interest, but also based on the possibility of harm to unknown third parties. Indeed, it is entirely foreseeable that a situation could arise in which it was medically advisable to prescribe drugs to a known drug abuser, and the physician was reluctant to do so because of the physician's potential liability to third parties. In contrast, for a failure to warn claim, imposing on the physician potential liability to the general public merely requires the prescribing physician to do what he is "already obligated to do for the protection of [his] patient." *See Myers*, 193 Cal. Rptr. at 736.

The reasoning of the Indiana Supreme Court in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991) is persuasive. In *Webb*, the defendant physician was alleged to have negligently over prescribed anabolic steroids to his patient, which caused the patient to turn "into a toxic psychotic who was unable to control his rages." *Id.* at 994. The plaintiff was shot and injured by the patient. The plaintiff sued the physician, urging the court "to find an affirmative duty on the part of a physician to administer medical treatment to a patient in such a way so as to take into account possible harm

to unidentifiable third persons." *Id.* at 995. The *Webb* court, in holding that no duty was owed to the plaintiff, found that:

> A physician's first loyalty must be to his patient. Imposing a duty on a physician to predict a patient's behavioral reaction to medication and to identify possible plaintiffs would cause a divided loyalty. Were we to impose a duty on a physician to consider the risk of harm to third persons before prescribing medication to a

---

[2] We recognize that there is evidence in the record suggesting that Hostetler was aware of the risks of driving while under the influence of the drugs and, therefore, any warning by Dr. Magee would have been futile. Nevertheless, we limit our review to those issues considered by the trial court which, in this case, was whether Dr. Magee owed a duty to third parties.

patient, we would be forcing the physician to weigh the welfare of unknown persons against the welfare of his patient. Such an imposition is unacceptable.

*Id.* at 997. Under the facts in this case, we must conclude that Dr. Magee owed no duty to Burroughs and her husband to consider potentially harm to them when prescribing drugs to his patient, Hostetler. Therefore, the trial court's grant of summary judgment is affirmed insofar as it relates to Burroughs' claims based on Dr. Magee's alleged duty to refrain from prescribing drugs to Hostetler because he was a suspected drug abuser and because he was a truck driver, and to refrain from prescribing drugs to Hostetler which were purportedly medically contraindicated or drugs which had a detrimental effect on Hostetler's driving abilities when taken either separately or together.

The case is affirmed in part and reversed in part as set forth above, and remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are taxed equally to the Appellant, Judy C. Burroughs, Individually, and as surviving spouse and personal representative of the Estate of Harold L. Burroughs, and her surety and to the Appellee, Robert W. Magee, M.D., for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE